**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01984-REB

WILDEARTH GUARDIANS,

      Petitioner,

v.

S.M.R. JEWELL, Secretary of the United States Department of the Interior,
UNITED STATES BUREAU OF LAND MANAGEMENT, and
UNITED STATES FOREST SERVICE

      Respondents.

---

**RESPONDENTS' MOTION TO TRANSFER
ACTION TO THE DISTRICT OF UTAH**

---

TABLE OF CONTENTS

MOTION .................................................................................................................. Unnumbered

MEMORANDUM IN SUPPORT ........................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    I.      LEGAL BACKGROUND ................................................................................ 2

    II.     FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ........................................................................................................................... 3

    I.      LEGAL STANDARD ...................................................................................... 4

    II.     PETITIONER'S CLAIMS COULD HAVE BEEN BROUGHT IN THE
           DISTRICT OF UTAH ..................................................................................... 4

    III.    THE INTEREST OF JUSTICE FAVORS TRANSFER ...................................... 5

          A.     Petitioner's choice of forum is entitled to minimal consideration ............... 6

          B.     The Local Interest Favors Transfer Because Petitioner's Claims
                Involve a Dispute over Management of Lands Located
                in Utah ........................................................................................................ 7

          C.     The Other *Chrysler Credit Corp* Factors are Neutral or
                Support Transfer ........................................................................................ 8

CONCLUSION ........................................................................................................................ 9

## MOTION

WildEarth Guardians challenges: (i) a decision of the U.S Bureau of Land Management ("BLM") approving issuance of a federal coal lease underlying a portion of the Manti-La Sal National Forest in Utah; and (ii) a decision of the United States Forest Service (the "Service"), administrator of the Manti-La Sal National Forest, consenting to lease issuance.  These decisions authorize expansion of the Skyline Mine into a tract of land known as the Flat Canyon. Petitioner contends the decisions violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, and the Mineral Leasing Act, 30 U.S.C. §§ 181-287.

Respondents respectfully request that the Court enter an order transferring this action to the District of Utah, pursuant to its authority under 28 U.S.C. § 1404(a).  *See Friends of the Norbeck v. U.S. Forest Serv.*, No. 10-cv-2164-AP, 2010 WL 4137500 at *2 (D. Colo. Oct. 18, 2010) (noting authority); *see also WildEarth Guardians v. U.S. Office of Surface Mining Reclamation and Enforcement* ("*Guardians 1*"), 1:13-cv-00518, 2014 WL 503635 (D. Colo. Feb. 7, 2014).  As explained in the memorandum that follows, transfer to Utah is appropriate because the claims could have been brought there and the relevant interest factors weigh heavily in favor of transfer.  Notably, the land at issue is located entirely within Utah's borders; the environmental and economic impacts of expanded mining would be felt there; and most of the state and federal agency approvals and concurrences have occurred or will occur there. Transferring the case to the District of Utah would promote "the interests of justice" and the "convenience of parties and witnesses."  28 U.S.C. § 1404(a).

**MEMORANDUM IN SUPPORT**

This case marks the fourth time in five years that WildEarth Guardians ("Guardians") has brought suit in the District of Colorado over federal coal operations elsewhere.

In 2011, Guardians challenged a decision of the Service consenting to BLM leasing of coal underlying Service-managed lands in Wyoming. *WildEarth Guardians v. U.S. Forest Service et al.*, No. 11-cv-3171-AP, 2012 WL 1415378 (D. Colo. Apr. 24, 2012). This Court granted the Service's motion to transfer the case to Wyoming, explaining it is "axiomatic that '[t]here is a local interest in having localized controversies decided at home.'" *Id*. at *3, quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947). In 2013, Guardians again brought suit in Colorado, challenging federal approval of plans for seven mines, only two of which are located in Colorado. The other five are located in Montana, New Mexico, and Wyoming. Consistent with the 2011 ruling, the Court granted respondents' motions for transfer, noting the "value in having environmental claims litigated where their impacts resonate most deeply." *Guardians 1*, 2014 WL 503635 at *1. In September 2015, Guardians filed this action, directed at mining in Utah, and another action, four days later, directed at mining in Colorado, New Mexico, and Wyoming. *WildEarth Guardians v. Jewell et al.*, 1:15-cv-02026-WYD (D. Colo. Sept. 15, 2015).[1]

Petitioner contends venue is proper in Colorado because Petitioner itself and Respondents "both have offices in this district." Compl. ¶ 10. Respondents do not dispute this conclusion and instead note that Petitioner in fact has an office in Utah. *See* http://www.wildearthguardians.org

---

[1] Guardians also brought suit in 2011 in the District of Columbia, challenging BLM's role in the very same Wyoming coal operations (and NEPA analysis) at issue in civil action number 11-cv-3171 (D. Colo.). *See WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F.Supp.2d 51 (D.D.C. 2013). In February 2013, the District of Columbia Court, on BLM's motion, ordered the case transferred to the District of Wyoming. *Id*. at 56

(indicating a Salt Lake City, Utah address).  More importantly, Respondents note that strong local interests in resolving disputes over management of federal coal resources in Utah – in particular, the economic and environmental interests of the citizens of Utah and Utah's role as primary regulator of mining within its borders – weigh heavily in favor of transfer.  As it did in civil actions 11-cv-3171 and 13-cv-518, the Court should transfer these out-of-state claims to the judicial district where the lease is located and where the effects of mining are most vitally felt.

## BACKGROUND

### I.  LEGAL BACKGROUND

BLM leases federal coal under authority of the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181-287, and in accordance with NEPA's requirements.  Where, as here, the surface estate overlying federal coal is managed by another agency, BLM must first obtain concurrence of the surface-managing agency.  *See* 43 C.F.R. § 3425.3.  Once an applicant obtains a lease, it must then obtain a permit to engage in underground coal mining operations from the State of Utah.  *See* Utah Code § 40–10–18.  Thereafter, an applicant must seek mining plan approval from Interior's Office of Surface Mining Reclamation and Enforcement ("OSMRE") and the Assistant Secretary of the Interior for Land and Minerals Management.  *See generally* 30 U.S.C. § 1201-1328 (Surface Mining Control and Reclamation Act of 1977), 30 U.S.C. § 207(c) (MLA).

### II.  FACTUAL BACKGROUND

Mining has not yet begun in the Flat Canyon tract.  To date, the mine operator has completed only the BLM and Forest Service stages of the approval process.  As the Petition for Review of Agency Action (hereafter "Petition" or "Pet.") explains, that process began in March 1998, when Canyon Fuel Company – then a subsidiary of Arch Coal and now a subsidiary of the

owner of the adjacent Skyline Mine, Bowie Resources – applied to BLM to lease the Flat Canyon Tract. Pet. ¶ 30.  Thereafter, BLM and the Service prepared an environmental impact statement ("EIS"), which the agencies released in final form on January 3, 2002.  *See* Ex. 1 (excerpts of Final EIS); *see also* 67 Fed. Reg. 2,651 (Jan. 18, 2002) (Notice of Availability of Final EIS).  On January 2, 2002, the Service issued a Record of Decision ("ROD") consenting to lease issuance.  *See* Ex. 2.  On April 11, 2002, BLM issued its own ROD, approving lease issuance.  *See* Ex. 3.  Leasing would occur following a competitive lease sale, to be held at some undetermined future time.  *Id.* at 1.

Soon thereafter, the operator requested that the 2002 leasing decision, though final, be placed on hold.  Pet. ¶ 35.  BLM acquiesced in the request and did not implement its decision. *Id*.  Ten years later, the operator again expressed interest in the Flat Canyon tract.  *Id.* ¶ 36.  In response, each agency examined the previously-prepared environmental analyses for the proposed lease, including the Final EIS, and determined, through different instruments, that the conclusions of the Final EIS remained valid and that no supplemental NEPA analysis was required in preparation for a lease sale and eventual lease issuance.[2]  On June 17, 2015, BLM held a competitive sale for the Flat Canyon lease and subsequently approved a bid submitted by Bowie Resources.  *Id*. ¶ 43.  On July 31, 2015, BLM issued the Flat Canyon lease to Bowie Resources, thereby implementing the 2002 leasing decision challenged in this action.  *Id*.

## ARGUMENT

This action should be transferred to the District of Utah because venue is proper there and transfer would best serve the interest of justice and the convenience of the parties and witnesses.

---

[2] Specifically, the Service prepared a Supplemental Information Report or "SIR," and BLM prepared a Determination of NEPA Adequacy or "DNA." Pet. ¶¶ 37-39.

## I. LEGAL STANDARD

The Court's authority to transfer claims is conferred by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The Court has broad discretion to resolve motions to transfer under 28 U.S.C. § 1404(a).  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  In resolving motions to transfer, courts in this circuit have followed a case-by-case approach, *id.* at 1516, exercising the discretion to transfer "according to individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964) (superseded by statute on other grounds).  To justify transfer, a defendant must establish that: (1) plaintiff could have originally brought the action in the proposed transferee district, in this case, the District of Utah; and (2) the public and private interest factors weigh in favor of transfer.  *See Friends of the Norbeck,* 2010 WL 4137500 at *2; *Van Dusen,* 376 U.S. at 622; *Chrysler Credit Corp.,* 928 F.2d at 1515.

As Respondents explain below, the connection between Petitioner, the controversy presented in this case, and the chosen forum – that is, the District of Colorado – is highly attenuated, thus favoring transfer to the District of Utah.

## II. PETITIONER'S CLAIMS COULD HAVE BEEN BROUGHT IN THE DISTRICT OF UTAH

The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a) is the requirement that the new forum be a "district or division where [the case] might have been brought . . . ."  28 U.S.C. § 1404(a).  Where the case "might have been brought" is determined by

4

reference to 28 U.S.C. § 1391(e)(1), which provides that in suits against agencies of the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides . . . ." *Id.* The claims in this action could have been brought in the District of Utah because, as noted, Petitioner has offices there. In addition, both BLM and the Service have offices in Price, Utah, and thus officially reside in Utah. Ex. 2 (Forest Service ROD), Ex. 3 (BLM ROD). In addition, the Final EIS and the two RODs were prepared in Utah. *See* Ex. 1 at 1, Ex. 2 at 1, Ex. 3 at 1. For these reasons, the claims in this action "might have been brought" in the District of Utah.

### III. THE INTERESTS OF JUSTICE FAVORS TRANSFER

The Tenth Circuit has identified nine factors for courts to consider in determining whether transfer is appropriate: (1) the plaintiff's choice of forum; (2) the convenience and location of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) the relative congestion of the docket; (7) conflict of laws issues; (8) the advantage of having a local court determine questions of local law; and, (9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.,* 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *Friends of the Norbeck*, 2010 WL 4137500, at *3.

Even though venue may be proper in Colorado, the action should be transferred to Utah because Utah is where the mine is located, where a great number of the operative facts occurred, and where the local interest is substantial. Given the interests of Utah as principal mining

5

regulator and the impacts of mining on the state, both economically and environmentally, transfer of the action would best serve the interests of justice.

### A. Petitioner's choice of forum is entitled to minimal consideration.

It is well established that a plaintiff's choice of forum receives little deference if plaintiff does not reside in the district. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1168 (10th Cir. 2010); *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006); *Friends of the Norbeck*; 2010 WL 4137500 at *3; *Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005). Petitioner is headquartered in New Mexico, Pet. ¶ 11, and although Petitioner alleges that it has an office in Denver, *id*. ¶ 10, there is no allegation that Denver is Petitioner's "principal place of business," *see Friends of the Norbeck*; 2010 WL 4137500 at *3, and, as noted, Petitioner has an office in Utah.

Nor should Petitioner's choice of forum prevail in a weighing of the interest factors simply because the agencies have offices in Denver. As the D.C. Circuit has noted, naming a federal officer as a defendant "does not alone anchor venue . . . ." *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior,* 669 F. Supp. 2d 88, 95 (D.D.C. 2009). More recently, this Court held in *Friends of the Norbeck* that petitioner's preferred district is "entitled to little weight," where "the bulk of the planning occurred" in the proposed transferee district, even if some Forest Service activity occurred in Golden, Colorado. *Friends of the Norbeck,* 2010 WL 4137500 at *3 n.2; *see also Airport Working Grp. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (any role played by officials in D.C. was overshadowed by the fact that permitting process, including public comments, occurred in California). Further, the federal agencies involved in the leasing process reside officially in Utah. Thus, taking into account "considerations of

convenience and justice," *Van Dusen*, 376 U.S. at 622, Utah is the most appropriate venue for Petitioner's claims to be heard.

        **B.    The Local Interest Favors Transfer Because Petitioner's Claims Involve a Dispute over the Management of Lands Located in Utah.**

Most importantly, this action presents matters of great local interest that should be adjudicated in the local forum. "Land is a localized interest because its management directly touches local citizens." *S. Utah Wilderness All. v. Norton* (*SUWA*), 315 F. Supp. 2d 82, 88 (D.D.C. 2004). The local interest in having land management decisions heard in the jurisdiction where the land is located is a significant element in determining whether the interest of justice favors transfer. *Guardians 1,* 2014 WL 503635 at *1 (referring to "locally charged claims"); *id*. at *3 (noting that "strong local interests" favor transfer); *see also Sierra Club v. U.S. Dep't of State*, No. C 09-04086 SI, 2009 WL 3112102 at *3 (N.D. Cal. Sept. 23, 2009) (explaining that "environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action."); *SUWA*, 315 F. Supp. 2d at 88-89 (transferring to Utah a case challenging sale of oil and gas leases on BLM-managed lands in Utah); *Friends of the Norbeck,* 2010 WL 4137500 at *4 (transferring challenge to Forest Service wildlife project to South Dakota, where the project was located). As the Supreme Court explained,

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. *There is a local interest in having localized controversies decided at home.*

*Gulf Oil Corp.,* 330 U.S. at 509 (emphasis added).

The residents of Utah have a "compelling interest . . . in having this localized controversy decided at home" because these counts involve land management in Utah. *Trout Unlimited v U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996). "[S]uits such as this one, which involve

7

. . . environmental regulation and local wildlife – matters that are of great importance in the [state] – should be resolved in" the state "where the people 'whose rights and interests are in fact most vitally affected'" are located. *Id*. at 19-20; *see also Friends of the Norbeck*, 2010 WL 4137500 at *4.

Petitioner's claims also raise significant economic issues for the State of Utah, both in terms of revenue to the state (in the form of royalties) and employment for her citizens. If the Court were to set aside the leasing decision, Utah would feel the effect, which makes resolution of the action in Utah all the more appropriate. *See, e.g., Nat'l Wildlife Fed'n v. Alexander*, 458 F. Supp. 29, 30-31 (D.D.C. 1978) (transferring an action challenging construction of a port terminal in South Carolina to that district, based in part on a finding that the decision will "impact primarily upon South Carolina"). Also relevant is the public participation during development of the NEPA analyses relied on by the agencies for their respective decisions. *See Friends of the Norbeck*, 2010 WL 4137500 at *4 (noting "the interest of the people of South Dakota" as reflected in comments submitted by residents of South Dakota during the planning process). Finally, the presumption that localized controversies should be decided in the local forum has particular resonance where Utah serves as the permitting authority and principal regulator of underground coal mining and reclamation within its borders.

### C. The Other *Chrysler Credit Corp* Factors are Neutral or Support Transfer

The remaining factors for deciding a motion to transfer are either neutral or support the proposed transfer. With respect to the convenience of witnesses, Respondents note that the claims in this case will be reviewed under the APA on the basis of an administrative record. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Friends of the Norbeck*, 2010 WL 4137500 at *3; *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1564 (10th Cir. 1994).

8

"Ordinarily, in a record review case, there would be no need for witnesses or other sources of proof." *Friends of the Norbeck*, 2010 WL 4137500 at *3. As a result, convenience of witnesses "has less relevance." *Trout Unlimited*, 944 F. Supp. at 18; *see also SUWA*, 315 F. Supp. 2d at 88 (not considering convenience to witnesses where court's review would be based upon administrative record and parties agreed witnesses would not be necessary). Nonetheless, the convenience of witnesses is not irrelevant. While witnesses are not likely needed for resolution of Petitioner's claims on the merits, declaration or court testimony may be required, for example, to attest to harm which might flow from the injunctive relief Petitioner seeks. *See* Petition at 30 ("Prayer for Relief"). Witnesses who can speak to the local impacts of mining or not mining are likely to be located in Utah. These considerations further favor transfer to the District of Utah.

## CONCLUSION

For all these reasons, the Court should grant Respondents' motion and transfer this action to the United States District Court for the District of Utah. On this date, Respondents are also filing a separate motion for relief from their obligation to answer or otherwise respond to the Petition for Review of Agency Action, presently due November 23, 2015.

Respectfully submitted this 20th day of November, 2015, by

> JOHN C. CRUDEN
> Assistant Attorney General
> Environment and Natural Resources Division
> U.S. Department of Justice
>
>  /s/ John S. Most
> JOHN S. MOST, Trial Attorney
> Natural Resources Section
> Environment and Natural Resources Division
> P.O. Box 7611 Washington, D.C. 20044
> 202-616-3353 (voice), 202-305-0506 (fax)
> john.most@usdoj.gov

9

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

  I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record, this 30th day of March, 2015.

            */s/* John S. Most
            JOHN S. MOST
            *Counsel for Respondents*