
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-1984-REB

WILDEARTH GUARDIANS, and
GRAND CANYON TRUST,

    Plaintiffs,

v.

SALLY JEWELL, in her official capacity as Secretary of the U.S. Department of the Interior,
UNITED STATES BUREAU OF LAND MANAGEMENT, and
UNITED STATES FOREST SERVICE,

    Federal Defendants.

## PLAINTIFFS' RESPONSE TO MOTION TO TRANSFER

### INTRODUCTION

    Defendants' venue-transfer motion asks the Court to substitute their preferred forum for Plaintiffs' chosen forum based on general local-interest considerations the Tenth Circuit has never said should matter to venue-transfer decisions under 28 U.S.C. § 1404(a). That is not a good enough reason to transfer this case to the District of Utah.

    There is no dispute that the District of Colorado is a proper venue. So, Defendants bear the burden of persuading the Court that it would be more convenient to resolve this case in Utah than Colorado. But Defendants' transfer argument is not about convenience. Defendants' claim is that this case should be decided in Utah because the federal coal lease at issue is there, the agency decisions at issue were made there, and the state therefore has an economic and land-management interest at stake. Yet that local interest has nothing to do with access to evidence,

convenience of witnesses, convenience for the parties or their lawyers, impaneling an attentive jury, familiarity with local law, or anything else that might yield efficiency and fairness.

In truth, Colorado is a more convenient place to decide this case. The central question will be whether two federal agencies followed federal law when deciding to sell federally owned coal on federal lands. This Court is equally as competent as the federal bench in Utah to resolve that question. Answering it will depend on the Court's application of federal law to an electronically reviewable administrative record, not application of Utah state law, not review of paper documents in Utah, not trial testimony, not jury deliberations, nor any other task that can be done more easily or fairly in Utah than in Colorado. None of the parties have their principal place of business in Utah, and none of their attorneys live or work there. Two of Plaintiffs' attorneys and WildEarth Guardians' staff lead on this case, however, work in Denver, not far from this District's courthouse. If this case is sent to Utah, Plaintiffs will have to engage a fourth lawyer, one licensed to practice in Utah. And both sides' counsel and essential staff, rather than just defense counsel, will have to travel out of state for any hearings that occur. Those burdens should carry enough weight to keep this case in Colorado, given that almost all the work to get this case ready for disposition will be done by counsel without involving witnesses or other site-specific matters, and the case will be resolved through no more than a few hearings before the Court. Transferring the case will also pile delay on top of inconvenience.

Plaintiffs admit that it is not obvious that this case should be decided in Colorado rather than Utah. But close venue-transfer cases are supposed to go the plaintiff's way. The Court should deny the motion and exercise its discretion to keep this case.

## FACTUAL BACKGROUND

In July 2015, the United States Bureau of Land Management ("BLM") issued a coal lease allowing Bowie Resource Partners LLC to expand its Skyline coal mine near Scofield, Utah in the Manti-La Sal National Forest. The new coal lease is called the Flat Canyon Lease. Because the Flat Canyon Lease is in a national forest, BLM could not issue the lease without the consent of the United States Forest Service. *See* 30 U.S.C. § 201(a)(3)(A)(iii). The Forest Service gave its consent to the Flat Canyon Lease in February 2013.[1] Plaintiffs contend in this case that BLM made the decision to issue the lease and the Forest Service consented to it in violation of the National Environmental Policy Act and Mineral Leasing Act of 1920.

For purposes of deciding this motion, Plaintiffs have little dispute with Defendants' summary of the relevant legal and factual background. But there are two important points to add.

First, the biggest problem with the agencies' approvals of the Flat Canyon Lease, though there are others, is that the agencies prepared an environmental impact statement ("EIS") to analyze the effects of the Lease back in 2002 but chose not to update it before approving the Lease over ten years later. *See* 40 C.F.R. § 1502.9(c)(1) (requiring agencies to supplement environmental impact statements under the National Environmental Policy Act when there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts"). And the biggest problem with their decisions not to supplement the EIS, though there are others, is that the agencies did not consider significant new

---

[1]     Defendants state that "[o]n January 2, 2002, the Forest Service issued a Record of Decision consenting to the lease issuance." Mot. at 3. This is misleading. The Forest Service published an environmental impact statement and record of decision under the National Environmental Policy Act in 2002 but did not provide BLM with its consent to the Flat Canyon Lease until February 4, 2013. Notice of Federal Competitive Coal Lease Sale, Utah, 80 Fed. Reg. 28,002, 28,003 (May 15, 2015).

circumstances and information that arose between 2002 and 2015 about the climate impacts of burning Flat Canyon coal and coal from similar leases in Montana, Utah, Wyoming, and Colorado. Colorado will share the burden of those impacts.

Second, as Defendants point out, to mine the Flat Canyon Lease, Bowie will also need approval from the Department of Interior's Assistant Secretary for Land and Minerals Management. *See* Mot. Transfer 2 (Nov. 20, 2015), ECF No. 9 ("Mot."); Ex. 1 to Mot. at S-4, ECF No. 10-1. Whether to grant that approval will depend on the recommendation made by the Western Region Office of the Office of Surface Mining Reclamation and Enforcement after the Western Region finishes preparing an environmental assessment analyzing the approval's effects. *See* Western Region, "Public Notice: Skyline Mine Mining Plan Modification, Environmental Assessment," (2015) *available at* http://www.wrcc.osmre.gov/initiatives/skylineMine/documents/publicNotice.pdf. The Western Region is working on that environmental assessment and will make its recommendation in Denver. *Id.*

## ARGUMENT

### I. Legal Standard

Defendants have asked the Court to transfer this case to the District of Utah under 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). A decision to transfer or keep a case under Section 1404(a) is committed to the Court's discretion. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) ("Section 1404(a) is intended to place discretion in the district court to

4

adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

The Parties mostly agree about the legal standards the Court should apply. Defendants concede that venue in the District of Colorado is proper. Mot. at 1, 5. So, Defendants bear the burden of showing, first, that this case could have been brought in the District of Utah and, second, that the District of Colorado is an inconvenient forum. Mot. at 4 (citing, *inter alia*, *Chrysler Credit Corp.*, 928 F.2d at 1515); *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). Plaintiffs concede that this case could have been brought in the District of Utah, as well as many other states under 28 U.S.C. § 1391(e). Thus, the only question to resolve is whether adjudicating this case in the District of Colorado is inconvenient.

Defendants correctly assert that the Court should weigh nine matters to answer that question:

[1] the plaintiff's choice of forum;

[2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;

[3] the cost of making the necessary proof;

[4] questions as to the enforceability of a judgment if one is obtained;

[5] relative advantages and obstacles to a fair trial;

[6] difficulties that may arise from congested dockets;

[7] the possibility of the existence of questions arising in the area of conflict of laws;

[8] the advantage of having a local court determine questions of local law; and,

[9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516.[2] As explained below, many of these factors are neutral or inapplicable. Plaintiffs' choice of venue, though, is entitled to some deference. And practical considerations make resolving this case in Colorado easier, more expeditious, and more economical (including the cost of making the necessary proof).

### A. Plaintiff's choice of forum should not be disregarded.

Typically, "[u]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972). Tenth Circuit precedent, though, allows the Court to give Plaintiffs' choice of forum little weight if the facts giving rise to this lawsuit do not have a significant connection to Colorado. *See Bartile Roofs*, 618 F.3d at 1167–68. This case is connected to Colorado based on the location of Plaintiffs' key staff and their attorneys, and the fact that climate impacts of burning coal from Flat Canyon and other federal leases in neighboring states—a nationally significant environmental issue raised by Plaintiffs' claims—will burden Colorado just as much as Utah.

If these connections to Colorado are not significant enough to justify the usual strong deference given to a plaintiff's choice of forum, that does not mean Plaintiffs' choice of forum should be given *no* weight. It should still be a thumb on the scales in favor of keeping the case in this District. Indeed, if all other considerations are a wash, the balance should tip to the plaintiff's chosen forum. *Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d

---

[2] If the "interest of justice" is a separate consideration not subsumed by these nine factors (a position unsupported by Tenth Circuit precedent), it is an additional one, and is not alone a sufficient basis to justify transfer absent a finding that this forum is inconvenient. *See Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305, 310 (10th Cir. 1950) ("Under the provisions of the statute, it is necessary, prior to making a transfer under Section 1404(a), that the court find that such transfer will be not only for the convenience of the parties and their witnesses but further that it is in the interests of justice.").

300, 309 (E.D.N.Y. 2002) ("[W]here the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed.") (quoting *Photoactive Prods., Inc. v. AL-OR Int'l. Ltd.*, 99 F.Supp.2d 281, 292 (E.D.N.Y. 2000)); *Sparshott v. Feld Entm't, Inc.*, 89 F.Supp.2d 1, 4 (D.D.C. 2000) (deferring to plaintiffs' choice of forum after concluding that factors bearing on convenience and interests of justice were in equipoise); *United Radio, Inc. v. Wagner*, 448 F.Supp.2d 839, 843 (E.D. Ky. 2006) (same).

### B. Defendants have no argument that Colorado is an inconvenient forum.

Convenience is the touchstone of the venue-transfer analysis under Section 1404(a). *See Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ("Congress, in passing § 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one."). After all, the statute gives district courts authority to transfer cases "for the convenience of the parties and witnesses, in the interest of justice…." 28 U.S.C. § 1404(a). As a leading Tenth Circuit decision on Section 1404(a) puts it: "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.*, 928 F.2d at 1515.

Defendants' motion all but ignores this mandate, making only a hasty suggestion that witnesses in Utah conceivably could be needed at some point. Defendants probably take this tack because it would be *more* convenient to keep this case in the District of Colorado, as explained below.

### 1. There is little chance that witnesses from Utah will be needed, and Utah is no more accessible for sources of proof.

This case will be decided based on an administrative record that can be reviewed just about anywhere. *See Friends of the Norbeck v. U.S. Forest Serv.*, 2010 WL 4137500, *3 n.3 (D.

Colo. Oct. 18, 2010) (observing that "[t]he concerns underlying [the location of the administrative record] have been, for the most part, rendered irrelevant and anachronistic" given that it can be compiled and reproduced electronically) (unpublished); *see also* D.C.COLO.LAPR 1.1–72.2 (administrative procedure docket rules); DUCivR 7-4 (same). There will be no depositions. There will be no trial. There will be no jury. Plaintiffs have not sought a preliminary injunction. Thus, inconveniencing potential witnesses or jurors should not matter at all. *See Friends of the Norbeck*, 2010 WL 4137500 at *3 ("Ordinarily, in a record review case, there would be no need for witnesses or other sources of proof.").

Defendants' speculate that testimony, not on the merits but about injunctive relief, "may" be required and that "[w]itnesses who can speak to the local impacts of mining or not mining are likely to be located in Utah." Mot. at 9. Yet when plaintiffs win Administrative Procedure Act cases like this, courts usually vacate the challenged decision and remand for further agency proceedings consistent with the court's decision. *See Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (stating that "remand, along with vacatur, is the presumptively appropriate remedy for a violation of the [Administrative Procedure Act]"). Besides, OSMRE still must issue a permit before ground-disturbing activities occur, reducing the likelihood that injunctive relief will be necessary if Plaintiffs are successful on the merits. Even if the Court were to eventually consider issuing a permanent injunction, there is no telling at this early stage whether the Court will take live testimony to do so (or instead rely on declarations), and whether any witnesses the parties would offer will be in Utah. *See Zurich Am. Ins. Co. v. Acadia Ins. Co.*, 2014 WL 3930487, *6–7 (D. Colo. Aug. 12, 2014) (acknowledging that "it is unwise for a judge to enter an order of transfer in the early stages of a case before it can be determined just what the

issues in that case are going to be") (unpublished); *Sierra Club v. Van Antwerp*, 523 F.Supp.2d 5, 12 (D.D.C. 2007) (rejecting argument that witnesses might be needed in an administrative-record case and finding that "convenience of witnesses and access to proof [were] irrelevant to the issue of transfer of venue").

    **2.  It will be easier and less costly to resolve this case in Colorado.**

The chief cost for both parties is near certain to be the time and expenses of their attorneys. Yet no party's attorneys live or work in Utah. The Grand Canyon Trust's lawyers both work in Denver, and they have easy and inexpensive access to this District's federal courthouse. Defendants' counsel works in Washington, D.C., and will need to travel for any in-person matters regardless of whether this case is docketed in Colorado or Utah. If the case is transferred to Utah, Plaintiffs' counsel would be required to associate another lawyer as local counsel. *See* DUCivR 83-1.1. Plaintiffs do not have in-house or pro bono counsel in Utah, and may be required to incur expenses to engage local counsel.

There is no denying that cases have said that convenience of counsel is not a relevant consideration under Section 1404(a). *See, e.g., Bailey v. Union Pac. R. Co.*, 364 F.Supp.2d 1227, 1230 (D. Colo. 2007); *WildEarth Guardians v. U.S. Forest Serv.*, 2012 WL 1415378, *4 (D. Colo. Apr. 24, 2012). But some courts have gone the other way. *See Rasure v. Sitter*, 2007 WL 4458119, *5 (D. Colo. Dec. 11, 2007) (unpublished) (observing that forum where defense counsel was located was more convenient because plaintiff would have to travel regardless); *Hawksbill Sea Turtle (Eretmochelys Imbricata) v. Fed. Emergency Mgmt. Agency*, 939 F. Supp. 1, 3 (D.D.C. 1996) (considering convenience of counsel in Section 1404(a) transfer decision). And because both WildEarth Guardians and the Grand Canyon Trust are represented

by in-house lawyers, inconvenience of *counsel* is inconvenience of the *parties*. Regardless, the issue here is less about mere inconvenience for Plaintiffs' attorneys and more about the unnecessary costs and use of staff time that transfer will impose on the plaintiff non-profits. *See, e.g.*, *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 474 (N.D. Ill. 1979) (recognizing that "if the convenience of counsel bears directly on the cost of litigation, it becomes a factor to consider").

      **3.   The balance of relevant considerations favors keeping the case in Colorado.**

Most of the remaining factors are not relevant. There are no questions as to the enforceability of a judgment, conflicts of law, or of local law that can be best resolved by a local court. But transferring this case will necessarily cause delay, disserving the expeditious resolution of this case. Plaintiffs filed this lawsuit on September 11, 2015. Defendants have not yet filed an answer, choosing instead to wait until the last minute before moving to transfer the case. Although the location of the case is irrelevant to production of the administrative record, the Defendants have not provided Plaintiffs with the administrative record. And on average, it takes longer to resolve civil cases in federal court in Utah than Colorado. *See* U.S. Courts, Federal Court Management Statistics, 79, 85 (June 30, 2015) (showing average time from filing to disposition of about 8 months in Colorado and over a year in Utah) *available at* http://www.uscourts.gov/file/18457/download. Meanwhile, the permitting process for the Flat Canyon Lease is marching forward, increasing the risk that Bowie begins mining coal even though Defendants' approvals were issued unlawfully. Thus, the expeditious resolution of this case would be best served by keeping it in the existing forum. *See e.g. Smith v. Colonial Penn*

*Ins. Co.*, 943 F. Supp. 782, 784–85 (S.D. Tex. 1996) ("[T]he Court declines to disturb the forum chosen by the Plaintiff and introduce the likelihood of delay inherent in any transfer…").

<center>*   *   *</center>

In sum, the convenience factors do not justify sending this case to the District of Utah, and Defendants have failed to carry their burden. *See Chrysler Credit Corp.*, 928 F.2d at 1515 ("The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.")

### C. Utah's general "local interest" is not a sufficient basis for disturbing Plaintiffs' choice of venue.

Because the relevant factors do not support their Motion, Defendants' main argument is that this case should be decided in Utah because the Flat Canyon Lease is in Utah, the agency approvals were made there, and mining the lease tract would impact that state's citizens and economy. Mot. 7–8. There are four problems with this argument, which in combination are a more than sound reason to give Utah's local interest no or little weight.

First, a general local interest is not among the nine considerations the Tenth Circuit has said courts should weigh in deciding whether to transfer cases under Section 1404(a). *Chrysler Credit Corp.*, 928 F.2d at 1516.[3] The advantage of having a local court determine questions of local law is a factor, but it has nothing to do with Defendants' argument about Utah's local economic interests, and it has nothing to do with this case, which turns wholly on federal law.

---

[3] The Tenth Circuit in *Bartile Roofs* cited a district court quotation of the Supreme Court's statement in *Gilbert* that there is a local interest in deciding localized controversies at home. 618 F.3d at 1171. But the court's analysis was focused on the advantage of having a Wyoming court apply Wyoming state law. *Id.*

The Court should give little credit to the cases Defendants cite for the idea that the local interest should be an important consideration. True enough, the Supreme Court said in an old *forum non conveniens* case that there is a local interest in deciding "localized controversies" at home. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947); *cf. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court W. Dist of Tex.*, 134 S.Ct. 568, 581 (2013) (observing in dicta in a forum-selection-clause case, that this may be a consideration under Section 1404(a)). But that point was based on factors not at issue here—that a jury ought not be forced to hear a case that has nothing to do with its community, that (in an era before the Internet and widespread television use, even) a trial should be within the view and reach of the community whose affairs it may touch, and that a diversity action should proceed in the forum whose state law may apply. *Id.* at 508–509. Neither of the two District of Colorado opinions that Defendants cite, moreover, explains how the local interest fits into the nine factors articulated by the Tenth Circuit. *See Friends of the Norbeck v. U.S. Forest Serv.*, 2010 WL 4137500, *4 (D. Colo. Oct. 18, 2010) (unpublished); *WildEarth Guardians v. U.S. Office of Surface Mining Reclamation & Enforcement*, 2014 WL 503635, *1, *3 (D. Colo. Apr. 24, 2012) (unpublished). All the other cases Defendants rely on are from jurisdictions outside the Tenth Circuit that look a different list of considerations under Section 1404(a). *See* Mot. 7–8.

Second, there is a good reason why the local interest should have little, if anything, to do with this venue-transfer decision: it has no bearing on what it will cost to resolve this case or how this case should turn out. Even if there may be cases where the local interest should factor into a court's venue-transfer decision, this is not one of them. The question to resolve here is whether two federal agencies complied with federal law in managing federal lands and mineral

resources that belong to the United States. Defendants offer no reason why "local interests" would have anything to do with that question. *See Concerned Rosebud Area Citizens v. Babbitt*, 34 F. Supp. 2d 775, 776 (D.D.C. 1999) ("The Government complains that a number of interested groups may be foreclosed from effectively participating in this case if it remains here. But the argument ignores the limited task of the Court. Plaintiffs seek a backward-looking review of an administrative process that is complete and has resulted in a final decision.").

Third, relying solely on Utah's local interest, rather than convenience of the parties, to transfer this case under Section 1404(a) would flout the venue provisions of federal law. Section 1391(e) of Title 28 gives plaintiffs three *alternative* venues for filing cases against the United States: (1) where the defendant resides; (2) where the plaintiff resides (if no real property is involved); and (3) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e). The rule does not rank order these three options. It does not say that venue is proper where the defendant resides *only if* a substantial part of the property at issue in the case is in the same place. To the contrary, Section 1391 says that "the proper venue for a civil action shall be determined without regard to whether the action is local … in nature." 28 U.S.C. § 1391(a)(2). Yet, to transfer a case under Section 1404(a) based *solely* on "local interest" considerations would make the first two residence-based venue options subordinate to the third option, even if one of the first two options is more convenient. That would flip Section 1404(a)'s *convenience*-based transfer provisions on their head, something the Court should decline to do.

Fourth, if it were proper to give local interest some consideration under Section 1404(a), then the Court should also consider that the permitting process for the Flat Canyon Lease will not occur solely in Utah, and the environmental impacts of the Flat Canyon Lease are not boxed in by Utah's borders. The Western Region of OSMRE in Denver is working on an environmental assessment analyzing the effects of giving its approval for the Flat Canyon Lease. *See* Western Region, "Public Notice: Skyline Mine Mining Plan Modification, Environmental Assessment (2015) *available at* http://www.wrcc.osmre.gov/initiatives/skylineMine/documents/publicNotice.pdf. And one of Plaintiffs' main arguments is that the Forest Service and BLM should have supplemented their 2002 EIS to consider new information about the air-quality and climate impacts of mining and burning Flat Canyon coal along with coal from numerous other federal leases in Utah, Wyoming, Montana, and Colorado. *See* First Am. Compl. ¶¶ 70–77; 88–91; 97–106. Colorado's people and places stand to shoulder a share of those impacts comparable to Utah's. Those who will be affected include hundreds of members of Plaintiffs' organizations who live in Colorado. Thus, Colorado too has a local interest in this case.

## CONCLUSION

If Utah's "local interest" in this case is not just shorthand for the most convenient place to handle this case—and it decidedly is not, since no witnesses are there and no evidence is there—then why should it matter to the question of where this case is resolved, even if other courts have deferred to local-interest considerations in other cases? Since transfer decisions under Section 1404(a) should be based on convenience, Utah's local interest should not override the convenience of resolving this case right here, in the District of Colorado. It is Plaintiffs' chosen forum, it will cost less to resolve the case here, it is an administrative-record-review case that the

federal bench in Utah is no better suited to adjudicate, it will cause delay to transfer the case, and Colorado shares an interest in this case. Defendants' motion should be denied.

Respectfully submitted this 11th day of December, 2015.

                                        s/ Aaron M. Paul
                                        Aaron M. Paul
Neil Levine
Grand Canyon Trust
4454 Tennyson St.
Denver, CO  80212
303-477-1486
303-455-0604
apaul@grandcanyontrust.org
nlevine@grandcanyontrust.org

s/ Samantha Ruscavage-Barz
WildEarth Guardians
516 Alto Street
Santa Fe, NM  87501
505-401-4180
sruscavagebarz@wildearthguardians.org

Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, MT  59807
406-549-3895
smcmillan@wildearthguardians.org

*Attorneys for Plaintiffs WildEarth Guardians and Grand Canyon Trust*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 11th day of December, 2015, I electronically filed the foregoing **PLAINTIFFS' RESPONSE TO MOTION TO TRANSFER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John S. Most
U.S. Department of Justice
P.O. Box 7611
Environment & Natural Resources Division
Washington, DC 20044-7611
john.most@usdoj.gov

                                              s/ Aaron M. Paul
                                              Aaron M. Paul